UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

REGINALD G. YOUNGBLOOD

CRIMINAL ACTION

NO. 11-6-BAJ-DLD

RULING ON MOTIONS TO SUPPRESS

I. BACKGROUND

The defendant, Reginald G. Youngblood ("Youngblood"), was indicted on January 13, 2011 for possession of cocaine base, marijuana and hydrocodone with intent to distribute, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a convicted felon. This matter is presently before the Court on two motion to suppress (doc. 18 and doc. 61) by the defendant.[1] The Government has filed written oppositions (docs. 20 and 65) to the defendant's motions to suppress. The Court conducted an evidentiary hearing on the defendant's motions on four separate dates.[2] Both parties have filed post-hearing briefs as instructed by the Court (docs. 105 and 106).

Officers of the East Baton Rouge Parish Sheriff's Office ("EBRSO"), the

---

[1] Concerning the first motion to suppress, the Government has conceded that the search which yielded the crack cocaine exceeded the scope of the warrant. The Government stated that it will amend Count One of the indictment to delete any reference to crack cocaine.

[2] The evidentiary hearing was conducted on October 13, 2011, December 7, 2011, December 19, 2011 and January 5, 2012.

1

Baton Rouge Constable's Office and the U.S. Marshal Service executed a search warrant and an arrest warrant procured by the EBRSO at the residence located on Willowood Drive in Baton Rouge, Louisiana on June 17, 2010.[3] The warrants related to a Louisiana state court indictment charging Youngblood with two counts of first degree murder. The defendant was apprehended at the scene and made statements to police concerning marijuana and a firearm that were located inside the residence. The defendant now moves to suppress these statements, as well as the physical evidence of the marijuana and a bottle hydrocodone pills that were found in the residence.

## II. LAW AND ANALYSIS

In his motions to suppress, the defendant raises several issues. The first is whether Miranda warnings were given to the defendant prior to him being questioned by law enforcement officials. The second issue is, if Miranda warnings were given, whether the defendant validly waived his Fifth Amendment rights prior to making incriminating statements. The third issue is whether the marijuana and hyrdocodone found in the residence were validly seized pursuant to the plain view doctrine. After careful consideration of the testimony presented at the evidentiary hearings as well as the memoranda of both parties, the Court determines that the defendant's motions to suppress should be granted in part and denied in part.

---

[3] The warrants were signed by Judge Michael Erwin of the Louisiana Nineteenth Judicial District Court.

## A. Miranda warnings and waiver

Former EBRSO Deputy Dain Lewis and Baton Rouge Police Department Detective Michael Eric Burkett each testified to giving the defendant Miranda warnings during the execution of the warrants at the Willowood residence. However, Youngblood maintains that the Government cannot affirmatively show that he was informed of his Miranda rights on June 17, 2010. Due the alleged failure of the officers give Miranda warnings, the defendant moves to suppress any incriminating statements made to the officers in response to questioning.

Dain Lewis was a member of the EBRSO Special Weapons and Tactics ("SWAT") team on the date in question.[4] The testimony from the evidentiary hearing indicates that the SWAT team's function at the Willowood residence was to secure the residence and to detain and centralize anyone found therein prior to the entry of police detectives. Captain Todd Martin, the SWAT commander, testified that it is not standard procedure for SWAT team members to give Miranda warnings and that for a SWAT member to do so would have been highly unusual.[5] Captain Martin also testified that to his knowledge, no SWAT member spoke to the defendant after securing the residence.

During the evidentiary hearing, Lewis testified that he encountered

---

[4] Lewis testified that his duty on that date was "to perform perimeter," or to secure the back of the residence. Transcript 12-19-11, p. 9, lines 13-17.

[5] Transcript, 10-13-11, p. 58, lines 2-7. Officers Woodward and Hurley also testified that SWAT team members do not ordinarily give *Miranda* warnings in the course of their duties.

Youngblood on the patio or rear carport of the residence. Lewis stated that SWAT members do not normally give Miranda warnings on the scene to persons who are being detained or arrested.[6] Nonetheless, Lewis testified that he recited the Miranda warnings to the defendant from memory on June 17, 2010.[7] Lewis maintained that the reason he gave Miranda warnings to Youngblood was because Lewis saw what appeared to be marijuana inside of one of the bedrooms in the residence.[8] Lewis stated that he asked whether Youngblood understood the rights, to which the defendant responded affirmatively.[9] Lewis further testified that he asked the defendant whether the marijuana was his, and that the defendant indicated that it was.[10]

Detective Burkett testified that after the SWAT team secured the scene, he walked through the residence looking for Youngblood and then exited through the back door.[11] Burkett stated that he encountered the defendant outside underneath the carport at the rear of the house.[12] Burkett testified that he separated the defendant from the group of other individuals found at the residence and advised

---

[6] Transcript 12-19-11, p. 23, lines 12-14.

[7] Transcript 12-19-11, p. 12, lines 12-17.

[8] Transcript 12-19-11, p. 23, lines 15-19.

[9] Transcript 12-19-11, p. 12, lines 18-22.

[10] Transcript 12-19-11, p. 12, lines 24-25.

[11] Transcript 12-7-11, p. 29, lines 12-17.

[12] *Id.*

4

him of his *Miranda* rights from memory.[13] Burkett further testified that Youngblood indicated that he understood the rights that were explained to him.[14] Burkett asked the defendant if there were any illegal narcotics in the residence, and, according to Burkett's testimony, Youngblood declared that he had a personal quantity of marijuana in his bedroom.[15] In response to additional questioning, Youngblood also stated that there was a small handgun in the bedroom dresser.[16]

Statements obtained during a custodial interrogation without the benefit of adequate warnings under Miranda are generally inadmissable. *U.S. v. Stevens*, 487 F.3d 232, 241 (5th Cir. 2007), *cert. denied*, 552 U.S. 936, 128 S.Ct. 336, 169 L.Ed.2d 236 (2007). A suspect may waive his Miranda rights "provided the waiver is made voluntarily, knowingly, and intelligently." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The government bears the burden of showing that a defendant was informed of his Miranda rights and that his waiver of those rights and any resulting confession were voluntary. *U.S. v. Chapa-Garza*, 62 F.3d 118, 121 (5th Cir. 1995), citing *U.S. v. Collins*, 40 F.3d 95, 98 (5th Cir. 1994), *cert. denied*, 514 U.S. 1121, 115 S.Ct. 1986, 131 L.Ed.2d 873 (1995). A valid Miranda waiver requires two distinct components. First, the relinquishment of the right must

---

[13] Transcript 12-7-11, p. 30, lines 9 - 17.

[14] Transcript 12-7-11, p. 31, lines 2 - 7.

[15] Transcript 12-7-11, p. 31, lines 15 - 22.

[16] *Id.*

have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *U.S. v. Hearn*, 563 F.3d 95, 104 (5th Cir. 2009), quoting *U.S. v. Cardenas,* 410 F.3d 287, 293 (5th Cir.2005).

Youngblood contends that Dain Lewis' testimony lacks credibility. Lewis testified that he contacted his supervisor, Lieutenant Malcolm Hall, Jr., on the date in question and told Hall about the marijuana which Lewis had observed inside the residence. Under examination, Hall could not recall having received a call from Lewis on June 17, 2010 concerning narcotics found at the Willowood residence.[17] The defendant also submits that there is no police reports which validates Lewis' claim to have given *Miranda* warnings. According to the testimony of Lieutenant Hall, however, unless Lewis made an arrest at the scene, he would not have been required to write a report, even if he had issued *Miranda* warnings.[18]

Considering the totality of the evidence, the Court finds that the Government has not met its burden of proof with respect to the Miranda warnings which were allegedly given to Youngblood by Dain Lewis. All of the testimony presented at the hearing, including that of Lewis himself, indicates that the duties of SWAT team

---

[17] Transcript, 1-5-12, p. 10, lines 10-15.

[18] Transcript, 1-5-12, p. 11, line 18 - p. 12, line 2.

6

members do not include issuing Miranda warnings. Lewis' statements with respect to the Miranda warnings are not corroborated by the testimony of any other witness. Accordingly, the Court will grant the defendant's motion to suppress as to the statements that were made to Dain Lewis.

With respect to Detective Burkett of the Baton Rouge City Police Department, Youngblood contends that any Miranda warnings which the detective may have given are invalid, because the Willowood residence is located outside the city limits, and therefore, the detective was acting outside of his territorial jurisdiction. The defendant cites Louisiana Code of Criminal Procedure Article 204 and La. R.S. 13:5540 in support of his argument.[19] La. C.Cr.P. Art. 204 provides that warrants

---

[19] La. C.Cr.P. Art. 204 provides:

The warrant shall be directed to all peace officers in the state. It shall be executed only by a peace officer, and may be executed in any parish by any peace officer having authority in the territorial jurisdiction where the person arrested is found, or by any peace officer having authority in one territorial jurisdiction in this state who enters another jurisdiction in close pursuit of the person arrested.

La. R.S. 13:5540 states:

A. Notwithstanding any other provision of law to the contrary, the sheriff of each parish may issue to a municipal policeman a sheriff's commission permitting such officer to have parishwide law enforcement jurisdiction or jurisdiction within such limited area of the parish as the sheriff shall designate. Application for such commission shall be made only by the chief law enforcement officer of a municipality or other political subdivision. A sheriff's commission may empower a local or municipal law enforcement officer to enforce any state law throughout the parish or may be limited in such manner as the sheriff shall determine. Such power may include the authority to arrest law violators both with and without a warrant or may be for the limited purpose of permitting such officer to enforce certain designated state or local laws or perform only those functions designated by the sheriff, and he may determine whether or not the officer shall be permitted to carry a handgun.

B. Municipal policemen, commissioned as herein provided, shall not be considered a deputy for any other purpose, and shall be treated for all purposes

shall only be executed by peace officers acting within their territorial jurisdiction, or by a peace officer in close pursuit of the person arrested. La. R.S. 13:5540 allows municipal police officers to receive a sheriff's commission providing for parishwide law enforcement jurisdiction. Youngblood submits that the record is void of any evidence that Detective Burkett had received such a commission from the EBRSO. The testimony elicited at the suppression hearing indicates that the search warrant was obtained and executed by the EBRSO. Detective Burkett testified that he had been investigating the defendant for narcotics trafficking activity for approximately a year prior to the execution of the warrant on June 17, 2010, and that he was present at the scene on that date to assist EBRSO SWAT team.[20]

The Court finds that the defendant's contentions with respect to the Miranda warnings given by Detective Burkett are without merit. First, the warrant was executed by the EBRSO, and Detective Burkett was only present to provide assistance. It has been recognized that it is common practice for officers to appear in other jurisdictions accompanied by members of a local police department, and that "courts have treated this practice with indifference." *Matthews v. Cunningham*, 2005 WL 2648865 (W.D. La. 2005). Secondly, La. R.S. 13:5540 pertains only to

---

as a municipal policeman when acting pursuant to said commission; and any bond, insurance coverage, or professional liability for any municipal policeman commissioned hereunder shall be paid by the municipality for which he is a municipal policeman.

[20] Transcript, 12-7-11, p. 26, lines 4-25

arrests, and not to the issuance of Miranda warnings. The defendant has cited no case or statute, nor has any been found by the Court, which would imply that Miranda warnings given by law enforcement officer are only valid in that officer's territorial jurisdiction. "The purpose of the detailed procedure fashioned by Miranda was to 'give meaningful protection to Fifth Amendment rights' by dispelling the 'compulsion inherent in custodial surroundings.'" *U.S. v. Montos*, 421 F.2d 215, 222 (5th Cir. 1970), *cert. denied* 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532, quoting *Mathis v. United States*, 391 U.S. 1, 4, 88 S.Ct. 1503, 1505, 20 L.Ed.2d 381 (1968) and *Miranda v. Arizona*, 384 U.S. 436, 458, 86 S.Ct. 1602, 1619 (1966). The Court finds that the defendant's Fifth Amendment rights were adequately protected by the Miranda warnings which he received from Detective Burkett, regardless of whether the warnings were issued outside the confines of the detective's territorial jurisdiction. Accordingly, the Court denies the defendant's motion to suppress the statements made to Detective Burkett.

Whether a defendant has waived his rights under Miranda presents a factual question for the district court. Such waivers may be direct, or in some instances, they may be clearly inferred from the actions and words of the person interrogated. *U.S. v. Oliver*, 630 F.3d 397, 409 (5th Cir. 2011). The defendant asserts in his motion to suppress that he was "apprehended and handcuffed, and forced to lie on the ground while police surrounded him with their firearms pointed at him in all

directions."[21] While the defendant was handcuffed, there is no evidence in the record indicating that any weapons were drawn either when the defendant was advised of his rights, or when he gave the statements to police. Detective Burkett testified that he made no threats or promises to Youngblood before the statements were made.[22] Likewise, there is no evidence to refute the defendant's direct statement to Burkett that he understood the Miranda warnings that were given to him. Accordingly, the Court finds that the defendant validly waived his Fifth Amendment rights when making statements to law enforcement agents.

## B. Narcotics in plain view

Youngblood argues for the suppression of the marijuana and hydrocodone found in the residence on the basis the search that uncovered these narcotic drugs exceeded the scope of the search warrant. The defendant also asserts that the narcotics were not found in plain view as the Government alleges.

The search warrant obtained by Deputy Todd Morris of the EBRSO authorized a search for "any documentation, whether printed, written, or electronic; computers; cellular telephones; and the person of the defendant."[23] Dain Lewis testified that during the execution of the warrant, he was assigned to provide security for Deputy Green, who detonated a "bang pole" distraction device through

---

[21] Defendant's Memorandum in Support of Motion to Suppress, p. 4 (doc. 18-1)

[22] Transcript, 12-7-11, p. 32, lines 17-20.

[23] Hearing Exhibit 1G

a window of the residence.[24] Lewis further testified that after the bang pole device was detonated, he looked through the window into the bedroom of the house and saw a bag of marijuana on an ironing board.[25]

According to his testimony, Detective Burkett was made aware of the presence of the marijuana through the statement given by the defendant.[26] Detective Burkett testified that after receiving the defendant's statement he left to re-enter the residence, at which time he was approached by a SWAT team member, who stated that he had observed marijuana in the bedroom of the residence.[27] Burkett stated that he then proceeded directly into the master bedroom of the residence, wherein he observed on an ironing board a gallon-sized plastic bag containing marijuana.[28] Detective Burkett additionally testified that he observed a medicine bottle on top of a dresser, which was found to contain hydrocodone.

Considering the totality of the evidence presented at the hearing, the Court determines that the marijuana and hydrocodone were lawfully discovered pursuant to the plain view doctrine and should not be suppressed. Youngblood argues that Dain Lewis' testimony is inconsistent and lacking in credibility and should therefore

---

[24] Transcript, 12-19-11, p. 10, lines 6-13.

[25] Transcript, 12-19-11, p. 10, line 23 - p. 11, line 3.

[26] Transcript, 12-7-11, p. 31, lines 15-19.

[27] Transcript, 12-7-11, p. 31, line 25 - p. 32 line 5.

[28] Transcript, 12-7-11, p. 32, line 25 - p. 33, line 4. A photograph of the marijuana was introduced during the hearing as Exhibit 2G.

be disregarded. The bang pole device detonated in the bedroom apparently caused a small fire, as evidenced by photographs of the scene.[29] Lewis testified that he did not recall seeing any scorch marks, burned curtains or indication of a fire when he looked through the bedroom window. The defendant further argues that the presence of the smoke in the room resulting from the fire would have prevented Lewis from observing marijuana on the ironing board.

Even if Lewis' testimony is disregarded, the Court nevertheless finds that the marijuana was validly discovered by Detective Burkett. Youngblood notes that the police report which Burkett prepared does not mention that he spoke to a SWAT team member about the presence of the marijuana. However, Burkett's knowledge about the marijuana originated from the statements given by the defendant, rather than the information received from the unidentified SWAT member. Further, Burkett testified that his report was prepared months after the search. Youngblood also points to the testimony of SWAT member Robert Woodward, who was assigned as the "recorder" during the execution of the warrant.[30] Woodward entered the bedroom prior to Detective Burkett, but could not recall seeing any marijuana.[31] Deputy Woodward also testified that since his primary function was to look for

---

[29] See, Hearing Exhibit 2D.

[30] Captain Todd Martin testified that the recorder's responsibility is to document any damage which police cause during the execution of a warrant. The recorder is also responsible for recording the location searched by each officer, as well as obtaining identifying information from any persons with whom officers make contact during the search. Transcript, 10-13-11, p.34, lines 2-8

[31] Transcript 10-13-11, p. 92, lines 14-20.

damage, and that he would not have been looking for drugs.[32] Moreover, SWAT team member Christopher Beaudet, who was present in the bedroom at the same time as Woodward, recalled seeing a bag of marijuana on the ironing board.[33]

Additionally, Youngblood insinuates that the marijuana was not found in plain view on the ironing board, but rather was likely discovered during a more extensive search of the area. The Fifth Circuit has stated:

> As a general rule, only items that are described in a search warrant may be seized in accordance with Fourth Amendment concerns. An exception to this general rule, however, is found where a police officer has a warrant to search a given area for specified objects and in the course of the search comes across some other article of incriminatory character. The property is then seizable under the plain view doctrine.

*U.S. v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005), citing *U.S. v. Bills*, 555 F.2d 1250, 1251 (5th Cir.1977). Pursuant to the warrant, officers were authorized to search throughout the residence in any place where the items described in the warrant could reasonably be found. If the marijuana was discovered during such a search, it could still be seized pursuant to the plain view doctrine, even if it was not found on the ironing board. The same rule would also be applicable to the seizure of the hydrocodone pills.[34] Nevertheless, the Court finds the testimony of

---

[32] *Id.*

[33] Transcript, 10-13-11, p. 106, line 17 - p. 107, line 4.

[34] The defendant makes no argument concerning the seizure of the hydrocodone pills in his post-hearing memorandum.

13

Detective Burkett to be credible, and holds that both the marijuana and the hydrocodone pills were validly seized pursuant to the plain view doctrine.

## III. ORDER

Accordingly, for the reasons stated herein, the motions to suppress (docs. 18 and 61) by the defendant, Reginald G. Youngblood, are **GRANTED** with respect to the statements made to Dain Lewis. In all other respects, the defendant's motions to suppress are **DENIED**.

Baton Rouge, Louisiana, March 29, 2012.

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA